Mr. Hogan good morning sir your honors we're here this morning they want to raise the lectern your there's a button on the side there somewhere that way you're closer to the mic thank you thank you but you are normal because when we have to do this quite often the first thing they look for is to grab that mic and so you're doing it just right let's just walk around with it your honors we are here this morning because the United States Attorney's Office for the Eastern District of Missouri has created a new exception to Florida versus Jardines in their brief on page 34 they carve out this exception known as the Little Peak exception which the government believes that despite the Florida versus Jardines which says third parties and persons are allowed to approach a home walk up onto the porch knock or ring wait briefly and then leave the government quoted that line in their brief on page 34 and then says well as long as the officer just does a little peek through a mirror tinted window a two-way mirror if he puts his face up against the glass and presses in and looks this Little Peak exception falls within Florida versus Jardines your honors the defendant Michael Glover wholeheartedly disagrees there is no case law to support their position as quoted in their brief your honors there were no exigent circumstances to conduct an illegal search of the home located at follows police officers in st. Louis City receive an anonymous phone call the caller refuses to state her name is a female voice she says a wanted suspect known as Michael Glover is in 5347 and right she knows his date of birth she says he has warrants for his arrest the police run this name and find out that that information is correct Michael Glover is wanted for open warrants out of st. Louis County and they are felony warrants the police proceed to 5347 and right they walk up and knock on the door announce themselves as police no one answers they leave they recall the phone number that they received the anonymous phone call on person will still not identify themselves but says mr. Glover is in the home looking at you through the second floor window he's buying plane tickets to get away the police set up a pleasant day May 22nd it's sunny this is a single-family home sir it's singly located they surround the house they surround the area and this is also in a gated community and I will note the caller the anonymous caller also knew the keypad to get into this community which is gated so the police set up a perimeter and wait and they wait and they wait some more they have no information other than information provided by an anonymous caller this isn't his address they say there is an escalate in the driveway which the police officer says someone informed them belong to mr. Glover but at dealer place was not licensed there was no regular Missouri license plates on the car the police then go to the front door walk up onto the porch which is in the curtilage of the home it's not even in question they knock on the door again and announce police no one answers the door at this point detective Wasson goes over to this and mind you I submitted this into evidence the pictures it is a mirrored tent it's not a dark tent like on a car it's a mirror tent the second floor windows which are not able to be looked into don't have tent just the windows where you can actually look into a house or mirror it and that comes under the Dunn case where it says steps taken by the homeowner to prevent people from looking in to procure their privacy the officer by his own admission has to as you would a two-way mirror when he does this he sees mr. Glover inside the living room mr. Glover has what the officer believes to be is a firearm a sidearm it's later turned out to be a BB gun but at the time it appears to be a handgun they argue that creates an exigent circumstance your honor and I'm not here to talk about what happens after he conducts an illegal search into the home you cannot get to the point of an exigent circumstance by an illegal search the search occurs when he places his face up against the glass what information do the police have at the time they have scant information from the anonymous phone caller he's not they have no idea he ever lived at this address there was no information stating it was his house Florida versus Jardines u.s. versus Fuentes which I cited in my motion to suppress evidence out of the actually move from a porch and stand up and peek inside a window the court said this is not this is a common trespass you are not allowed to peek in people's windows the government in their brief cites the fact that they said girl scouts and trick-or-treaters may approach your porch here in st. Louis and press their face up against the glass that there's that's not mentioned anywhere in Florida versus Jardines people here in st. Louis City who generally price press their face up against your glass of windows or burglars and thieves in this case that was the police that was a search he could not see mr. Glover numerous police officers on May 22nd went on to the porch no one could see inside the house by the officers own admission was not until he pressed his face up against the glass and as judge Kagan stated in the judge Dean's decision it would be like someone coming out on your porch with a pair of super high-powered binoculars because they could see something in your home which you never intended for them to see as the King say give that the King case states in my brief a man's home is as great as is his castle and it's the one place where he is protected sanctuary from prying eyes of the outside world the government cites Garcia in Garcia there was a screen door a screen door by its very nature when you press you you don't have to press your face against a screen door it's Garcia there was a person on the other side of the door they were speaking to that was not the case here they didn't know if anyone lived there if anyone was home they didn't know who the house belonged to they didn't know if he was inside this wasn't a confidential informant who they had reliability who they've used in the past this was simply an anonymous caller they cite the Mathis case the Mathis case talks about a backyard protections in outside areas and backyards are not the same as they afforded as under the King case and when it's your home and in the math in Mathias case he actually peeks through because there's slats in the fence to see in this case great steps were taken to protect the outside world from viewing into his home in this area well let me ask you this too do we even have to get to the search issue because as I understand the record the magistrate judge found and the district court adopted a finding a fact that the officers had reasonable belief that the suspect was in the house and if you get if they have reasonable reason to believe he's in the house and they have an arrest warrant doesn't is it was the United States versus Powell it's Paul something doesn't that give them the authority to enter the home no even if even without looking at in the window no it does not your honor and in the United States versus Stigall Stigall pronouncing it correctly Stigall they the general premises with an arrest warrant a search of a defendant's home you do not need a search warrant for the defendant's home but in this case your honor I would argue to the court the police did not have probable cause to believe he was in there what cause did they have to believe he lived well it's not probable cause it's reasonable suspicion reasonable suspicion this is an anonymous caller but the prop but the problem is and then we under our standard we have to find that the the district court was clearly erroneous in making a finding of reasonable suspicion it is a hard standard your honor but I believe if you examine just a simple facts of the case of I differentiate again between an anonymous caller and a phone call the police determined it's reasonable the court agrees with them I wholeheartedly it is it's a simple factual situation that is not reasonable to believe that a phononymous phone caller says someone's in a house that gives anyone the right to go up there and to commit an illegal search if it was mr. Glover's house if it was mr. Glover's home then under Stigall the arrest warrant alone would suffice but there are exceptions and the one exception to the arrest warrant is if it's not the person's home you they could have applied for a warrant there was no exit she there was no fear of escape the house was surrounded by the police zone admission instead of going to a neutral magistrate and applying for a warrant they just been searched the take my time now yes well we'll hear from the government good morning mrs. Winfield good morning your honor may please the court counsel your honors in this particular case on May 22nd 2012 officers with the st. Louis City Metropolitan Police Department were executing valid arrest warrants for Michael Glover who resided at 5347 in right he resided there they had reasonable belief to believe that he was there I'd like to go through all of the facts that support the fact that the officers reasonably believed that he was there and I'd also like to point out that that reasonable belief standard is well below probable cause and even reasonable suspicion so in this 911 call it was reported that Michael Glover they gave his date of birth they gave his name they gave his address was wanted and more specifically in that 911 call which is exhibit 50 it was entered into evidence the 911 the dispatcher asked the 911 caller is he there with you and she said well I'm not there I don't stay there with him but that's his address so based off of this information and the fact also I'd like to add that very same 911 caller gave a code to the gate that allows people to enter the place where the residence is so after the police received this information they then checked and verified that Michael Glover in fact had these active warrants I'd also like to note that these active warrants are also connected to count one in this case and the defendant is not challenging count his count one conviction but anyway those arrest warrants were then verified the police arrived at the residence approached the house no answer so then the police go back to the car they recontact the 911 caller when they recontact the 911 caller after they check the perimeter they check the windows and doors banged on the door announced police no answer they recontacted the 911 caller when they recontacted her police officer Murphy Ryan Murphy testified that the 911 caller said when he asked her you know he said no one's there she said no he's in there and then she went on to explain everything that they had just done she said that there were five guys there this person on the phone told me that he's in there right now he just said you know five of you guys that showed up you were going around checking the doors banging on the doors and described to a T what the officers had just done this is in real time so if this 911 callers not there she's talking to somebody who's there and the officers reasonably believe that was Michael Glover so after they recontacted the 911 caller she made these statements the the violent offender unit was then called in after the violent offender unit was called in officer Cornell who testified at trial to said he arrived well officer Cornell had been to that's looking for Michael Glover in March of 2012 and at that time he made a packet in that packet included criminal history from Michael Glover a photo from Michael Glover his pedigree date of birth and all that information was provided to the officers at the scene at the same time there was a black escalate outside of the house officers verified that escalate was associated with Michael Glover it was linked to him how is it linked to him well it also has to do with conviction number one there was a black X escalate present and registered to mr. I won't say registered because I could it was linked to mr. Glover at the scene of his arrest involving the facts surrounding conviction and the conviction in count one where he was shooting up police officers in st. Louis County and resisting arrest there was a black escalate at that particular arrest scene where they seized evidence and this was a black escalate as well and officers testified that they verified that that escalate was linked to him also while officers were present at the scene they observed people arrive to the residence and start repairing a flat tire on that very escalate so we have all this information from the 911 caller those individuals open the gate to get to the truck that they then repaired officers testified that the would that one of the men that was at the scene was on a cell phone at the same time that they were repairing the flat tire they repair the flat tire they leave the officers then approach the door again all of this is happening in real time all of this is leading to the officers reasonable belief that the defendant is inside the officers approach the door at that time off detective Watson testified he heard a noise from behind the door so all of this information supports the fact that the officers had their reasonable belief that he was in there a reasonable belief requires that the officers have articulable and specific facts which couple when coupled with inferences support the reasonable belief that the person is inside and in this particular case we have numerous specific facts which support that they believed the defendant was inside so after the noise was heard from behind the door that's when detective Watson peered inside the door and then saw Michael Glover with what he believed to be a weapon in his hand now you also have to take into consideration that these officers have to base their their reasonable belief on their experience now this violent offender unit is actually the unit that a little over a year before they these members who were present on May 22nd are members of the unit that dealt with the arrest they were trying to execute a warrant when United States Marshal John Perry was killed by someone who they were exiting executing a warrant on so even though these particular unit members weren't necessarily there when John Perry was killed all of this experience goes into their training and experience and when they hear noise behind the door and they know that these these this person has several violent felony warrants that are active and one of those warrants was assaulting a law enforcement officer first-degree resisting arrest when they look at his criminal history which was in that fugitive packet and they see all of these previous felony arrests and convictions all of this goes into their reasonable belief so we don't even get even if we want to talk about exigent circumstances we don't even get to the next steps because we believe that we've shown these officers had numerous reasons to believe that this particular defendant was inside and it was the defendant's home even hit even in document 121 follows from that after after we had reasonable belief to believe that he was there then exigent circumstances came about because that noise behind the door then puts the in fear naturally that this violent felony offender this violent criminal is behind the door there's noises he peeks in he sees what he believes is a gun and then they're able to go in they have a valid felony warrant several active warrants pending there's never been any argument they weren't valid I'm sorry you're gonna have the warrant in hand they had well they had checked that the warrants were pending and they were active so yes into several officers testified that and the defendant is again the defendant is back to the question of what was I can't remember the officer's name who peered through the detective Wasson what's your closest case that would support that that him peering into the door was that you putting his face up against the window and peering through this otherwise opaque well your honor even if we talked about even if we I would argue that Jardines isn't applicable in this case because we actually had a valid felony arrest warrant but quite honestly if if we go with what the defense counsel just said and said burglars and thieves look in the windows then I guess I'm guilty of that because I did it on Thanksgiving at my aunt's house when I had ice and a cake in my hand because I'm looking through the door waiting for someone to come I would argue that it is common habit of the country and many people have peered into doors and be a trick-or-treaters be a Girl Scout leaders I don't think it was beyond what normal people or everyday people would do in this particular case though I think what takes what makes every step that these officers took valid is that they went back and checked and verified and the steps just they built on top of each other starting with the 9-1-1 caller evidently that 9-1-1 caller had information that the officers didn't have on the scene and that information coupled with what the officers were observing from the person who was repairing the flat tire from the fact that you know the warrants were valid and active and everything was lining up and again this is in real time it's I think it's it's a little easier for me to sit in and review all this and have the leisure and the time to review what went on but these officers were in the middle of the moment they were making decisions and we believe that every step that they take this why did they even have to look in if they knew he was in there and he was a violent person with a weapon I think they did they could have broken down the door but again I believe that these officers on the scene were taking very close and very thoughtful steps in every decision that they made in order to keep themselves and others safe could they I'm sorry change it from tinted windows to mr. door could they have opened the door to peer in your honor I believe they had a valid search warrant and they they knew that the defendant lived there they believed that he was inside so yes I believe they could have executed that warrant and broken down the door yes I'm sorry your honor did you have a question well it wasn't a search warrant was an arrest warrant it wasn't a restaurant but the question I was going to ask is was there any issue raised and I don't think it was relied upon about standing in this case if he didn't own it was he regular what was that just not an issue in the case well in this particular case even from the beginning we knew that the defendant lived there and so you concede he was living yeah and standing to raise the yeah and the pleadings even in the motion to suppress I mean the defendants own pleadings it said defendants home defendants home but if he wants to now change his position and say he didn't live there our argument would be he would have no standing in this particular case any other questions that's an interesting case thank you for this at the outset we note that you were appointed under the Criminal Justice Act yes your honor and the court wants you to know we deeply appreciate your willingness to accept the assignment oh thank you your honor run I have several kids in private school so I greatly appreciate the assignments themselves now your honors the government takes great pains to describe mr. Glover as an arch criminal I do not object to that that is a reason relief that he's an arch criminal and that the warrants were valid we don't dispute that but an arch criminals rights are no less in his home than the rights of a common person and a law-abiding citizen your understanding was never raised throughout any of these and when it comes to the question that judge Wollman asked regarding opening a door Kentucky versus King addressed that and in that the United States Supreme Court said what would prevent an officer from opening their front door window that is in effect what they did when they talk about Garcia Garcia is a screen door there's a big difference between a screen door and an oak door a screen door is made to be looked through an oak door is made to stop you from seeing in a regular glass window and a mirrored tinted glass window let's see according to judge buckles it was a dark metallic screen door in the doorway and it was necessary for the officers to shade their eyes and press their face against the screen door and in that case also your honor there were individuals inside they were actually speaking to at the time which is wholly different than the circumstances here they knew someone was inside in Garcia because they heard them and they were talking to them through the screen door where in this case they had no idea whether someone was home and they never ever established it was his home the government says there was a packet on mr. Glover he was a wanted violent he was a wanted violent fugitive they knew that this address was never in their packet they never went to this address before the reasonable belief is based upon an anonymous phone caller and there are I will admit there are some facts which the government has stated which the 9-1-1 anonymous caller provided to the police which gave them a reasonable belief at that point with that reasonable belief your honors what was stopping them from getting a warrant there were no exigent circumstances at the time it was quiet they believed no one was there in their brief they argue that I'm knocking on the door and someone not answering is proof no one's home can I ask a couple about a couple facts I believe that that that miss Winfield said that they heard a noise and they knew somebody was inside is that is that a factual finding I have to go back and look at judge buckles and the other day I want to ask you and I just give you both of them I understand judge buckles said I think it was buckles said that look at the order that the car in the driveway was registered to Glover apparently it's associated but not registered I'm not sure what the I asked a specific question to detective Watson because I knew for a fact they were actually dealer plates there were dealer tags not Missouri license plates paper tags and detective Watson said on the stand it was not registered to him I received information from someone that it was his vehicle was how we phrased it I received information from someone who was his vehicle it was never able to establish what information or whom it came from but it was not registered it wasn't a tag like we own on a car where it would come back to us that was not to say what about the issue that they heard some noises that would indicate there in fact was somebody inside that was out on the record your honor and the detective did state that they thought they heard someone moving around inside the residence so if that was the case but your honor this was the second time the police approached the porch the police originally approached the porch knocked on the door and announced and then came back with even more police and they could not see hide nor hair of mr. Glover and they once the police entered the house and what they recovered what they recovered it was clear that mr. Glover resided there whether we owned it or rented it he resided there but up into the point where they came to the house they had no idea other than the caller on phone and the caller on the phone didn't say it was this house you said he was inside the house what was going to a neutral magistrate and I will point out I will point out that in the affidavit for search warrant they never mentioned peeking in a window and they never mentioned that it was an anonymous phone call they say received information they leave that out of the affidavit that it was anonymous and they never mentioned peeking into a window in the affidavit the reason it was left out is because it raises several red flags for any judge for any magistrate they had an easy opportunity the house was surrounded this was in the morning it's bright sunlight they said they had him inside what was preventing them from getting a warrant instead of getting a warrant they were tired of waiting he goes up and peeks inside someone's window he commits an illegal search everything that follows afterwards your honor should be it is illegal is illegally obtained they were aware of this man's history yes your honor and what part what does that how does that knowledge factor into what is this a reasonable just question or just a flat-out illegal sir well in your standpoint the legal your standpoint you cannot look through get people I close the window that's designed to preserve your privacy it would be akin to Kentucky King you'd basically be opening a closed door and peeking in what you cannot do thank you your honors very well the case is well presented and prevents a defense it presents an interesting question for us the case is